IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Fred Freeman, #235180, ) | CIVIL ACTION NO. 9:11-1205-DCN-BM |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Derrick NLN, Director of Nursing, ) | |
| Defendant. ) | |

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendant.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on October 13, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 14, 2011, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendant's motion on October 31, 2011, to which the Defendant filed a reply memorandum on November 9, 2011. Plaintiff also filed a reply on November 21, 2011.



- 1 -

Defendant's motion is now before the Court for disposition.[1]

## **Discussion**

Plaintiff, a frequent filer of pro se litigation in this Court, alleges in his Verified Complaint[2] that on May 15, 2008, he signed up to be seen in "sick call" on May 16, 2008. Plaintiff alleges that when he failed to receive an order to report for sick call, he requested the unit officer to call medical because he is an epileptic and was experiencing "unusual symptom[s]". Plaintiff alleges that the unit officer called and spoke with the Defendant Derrick, Director of Nursing, but that Derrick claimed that Plaintiff's name was not properly on the sick call list and told the unit officer that Plaintiff would have to wait three days before being seen. Plaintiff alleges that, as a result, he was not seen until May 19, 2008,[3] even though Nurse Derrick was aware that he suffers from epilepsy as well as certain "physical injuries", which include spinal cord abnormalities as well as tear duct problems.

Plaintiff further alleges that an investigation conducted of this matter by the SCDC general counsel's office "reveal that [Plaintiff] was denied emergency care." Plaintiff alleges that the Defendant Derrick was "fully aware" of his medical problems and of his need for emergency

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[3] May 16 was a Friday - May 19 was the following Monday.



care, but that Plaintiff required him to wait three days before being seen, causing him to experience pain and suffering. Plaintiff has attached to his complaint copies of various grievance forms and documents from an appeal to the South Carolina Administrative Law Court. Plaintiff seeks monetary damages. See generally, Plaintiff's Complaint with attached Exhibits.

In support of summary judgment in the case, the Defendant Pamela Derrick has submitted an affidavit wherein she attests that she is the Nurse Administrator/Manager at the Allendale Correctional Institution (ACI), where Plaintiff is housed. Derrick attests that the SCDC only maintains copies of sick call requests in its files for three years, and that, due to the age of Plaintiff's claim, the sick call records from May 15, 2008 have been removed and destroyed. Derrick further attests, however, that the SCDC keeps medical records in the normal course of business, and that relevant portions of Plaintiff's medical records are attached to her affidavit.

Derrick attests that sick call at ACI is usually held on Mondays, Tuesdays, Thursdays, and Fridays, and that Plaintiff complains in this Complaint that he was not seen on May 16, 2008, which was a Friday. Derrick attests that the usual procedure is that when an inmate makes a sick call request they are scheduled for the following day, although she can add patients to the sick call list on the day of sick call if it is an emergency. Derrick attests that Plaintiff's complaints on May 16, 2008 were not an emergency or new complaint, and he was therefore instructed to make a regular sick call request. Derrick attests that Plaintiff's medical records show that he was then seen in sick call on May 19, 2008, the following Monday, and that he was also seen in the doctor's clinic by Dr. Byrne on the following day, May 20, 2008. Derrick attests that Plaintiff was not noted to be in any acute distress on either May 19 or May 20, 2008. See also, attached exhibit [Encounter Nos. 425 and 426].



Derrick attests that Plaintiff is a frequent visitor to medical and his complaints are well known to her and the other medical staff. Derrick attests that Plaintiff comes to sick call on an average of every two to three weeks with complaints about being light headed, having headaches, and other vague symptoms, but with no acute medical problems, and that there was no reason to believe that Plaintiff was in need of emergency medical treatment on May 16, 2008. Derrick attests that all relevant times she and the medical staff treated Plaintiff with the appropriate standard of medical care. See generally, Derrick Affidavit, with attached exhibit [Medical Records].

The Defendant has also submitted an affidavit from Thomas Byrne, who attests that he is physician licensed to practice medicine and is employed by the SCDC to render medical are to inmates incarcerated at ACI. Byrne attests that Plaintiff has been incarcerated since 1996, and arrived at ACI in September 2006 with a history of seizure disorder, for which he is medicated with Dilantin. Dr. Byrne attests that Plaintiff is a frequent visitor to the medical office, and that he sees the Plaintiff in the doctor's clinic regularly, as often as every two to three weeks. Dr. Byrne attests that Plaintiff reports with the same complaints "again and again", including that he is light headed and has headaches which Plaintiff attributes to his Dilantin level. Dr. Byrne attests that Plaintiff believes that his Dilantin level was too high at one time, and that that has caused numerous health problems.

With respect to Plaintiff's complaint about not being seen by medical on May 16, 2008, Dr. Byrne attests that there was no need for Plaintiff to have emergency care on that date. Dr. Byrne attests that Plaintiff was seen in sick call on May 19, 2008, and was noted to be in no apparent distress. See also, attached medical records [Encounter No. 425]. Dr. Byrne attests that he saw the Plaintiff the following day, at which time he was complaining of lightheadedness and wanted to have



his Dilantin level checked. Dr. Byrne ordered lab work for him; see also, attached medical records [Encounter Nos. 426 and 427]; and Dr. Byrne attests that the results of these tests showed that Plaintiff's Dilantin level was 13.1, which is in the therapeutic range, and that Plaintiff had no acute problems at that time. See also, attached medical records [Encounter No. 431]. Dr. Byrne further attests that, prior to May 16, 2008, Plaintiff had been seen in sick call on April 29, 2008 complaining of lightheadedness and headaches in the back of his head, but he again had no acute problems at that time. See also, attached medical records [Encounter No. 423]. Plaintiff's Dilantin level had also been checked on March 11, 2008, when it was 14.0, which is in the therapeutic range. See also, attached medical records [Encounter No. 421].

Dr. Byrne attests that Plaintiff and his complaints are well known to him and the medical staff, that Plaintiff has no acute physical disease process, that Plaintiff is obsessed with the idea that there is a problem with this Dilantin level and that this is causing his "symptoms" which do not manifest themselves on examination, and that Plaintiff is also convinced there was a coverup that at the Perry Correctional Institution in 2003, when Plaintiff believes his Dilantin level was too high. See also, attached medical records [Encounter Nos. 426, 434 and 438]. Dr. Byrne attests that Plaintiff has other delusional ideas, such as that Dilantin has caused loose teeth, that his medical appointments at the McDougal Correctional Institution were taped, and that using a different brand of Dilantin tablet has caused problems. See also, attached medical records [Encounter Nos. 405, 407 and 434].

Dr. Byrne attests that, in his opinion, Plaintiff's complaints are largely psychosomatic, that Plaintiff's Dilantin levels were in the therapeutic range both before and after May 16, 2008, and that Plaintiff has never been observed to have a seizure while in the SCDC. Dr. Byrne further attests



that Plaintiff makes frequent visits to medical when nothing is objectively wrong with his health, and that to a reasonable degree of medical certainty Plaintiff had no need for emergency medical treatment on May 16, 2008. Dr. Byrne further attests that, at all relevant times, he and the medical staff treated Plaintiff within the appropriate medical standard of care. See generally, Byrne Affidavit with attached exhibits.

As an attachment to his response in opposition to the Defendant's motion, Plaintiff has submitted a copy of what is apparently the Department of Corrections' brief and motion to dismiss in the administrative appeal of his grievance.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after



careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

In order to proceed with his claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether the named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 834-835 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff's complaint is essentially that the Defendant was deliberately indifferent to his serious medical needs when she refused to add him as a patient to the sick call list as an "emergency" on May 16, 2008, and instead required him to make an appointment through the usual sick call request procedure. However, while Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendant has submitted medical documents and affidavits which refute his claims. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant



acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837.

The Defendant, a registered nurse, attests in her affidavit that Plaintiff had no emergency medical need on the date at issue, an opinion confirmed by Dr. Byrne, a licensed physician. Both of these medical professionals further attest that Plaintiff received the appropriate standard of care for his complaints, and the medical records provided to the Court fail to reveal any inference of any medical professional being deliberately indifferent to Plaintiff's serious medical needs, nor do they give rise to a genuine issue of fact as to whether Plaintiff suffered any injury or aggravation of a medical condition based on the decisions made. By contrast, Plaintiff only generally alleges in his Complaint that medical personnel refused to provide him the treatment he desired, but has provided no evidence, medical or otherwise, to support his claim. Such bare boned and unsupported allegations are not sufficient to allow this claim to proceed. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].

Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has been inadequate. However, that is not the standard for a constitutional claim. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether the named Defendant was deliberately indifferent to Plaintiff's serious



medical needs, and therefore Plaintiff's federal § 1983 medical claim should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

## **Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 22, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

